## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **THE GOODYEAR TIRE & RUBBER COMPANY** | ) | **CASE NO.** |
| **200 Innovation Way** | ) | |
| **Akron, OH, 44316 -0001** | ) | **JUDGE** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **COMPLAINT FOR BREACH OF** |
| | ) | **CONTRACT** |
| **v.** | ) | |
| | ) | **(Jury Demand Endorsed Hereon)** |
| **SEARS, ROEBUCK & CO.** | ) | |
| **c/o CT Corporation System,** | ) | |
| **Statutory Agent** | ) | |
| **208 South LaSalle Street, Suite 814** | ) | |
| **Chicago, IL 60604** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SEARS HOLDINGS CORPORATION** | ) | |
| **c/o The Corporation Trust Co.,** | ) | |
| **Statutory Agent** | ) | |
| **1209 Orange St.** | ) | |
| **Wilmington, DE 19801** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SEARS HOLDINGS MANAGEMENT CORPORATION** | ) | |
| **c/o C T Corporation System,** | ) | |
| **Statutory Agent** | ) | |
| **208 South LaSalle Street** | ) | |
| **Suite 814** | ) | |
| **Chicago, IL 60604** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff The Goodyear Tire & Rubber Company ("Goodyear"), for its complaint

against Defendants Sears, Roebuck & Co.; Sears Holdings Corporation; and Sears

Holdings Management Corporation (collectively "Sears"), states as follows:

## Preliminary Statement

1.      In 2009, Goodyear and Sears entered into a co-branding agreement related to Goodyear's GOODYEAR, FUEL MAX, and FUEL MAX TECHNOLOGY trademarks (the "Goodyear Trademarks") and Sears' WEATHERHANDLER trademark (the "Sears Trademark").   Under the co-branding agreement, Goodyear would manufacture tires bearing both the Goodyear Trademarks and the Sears Trademark for sale exclusively at Sears stores.   Goodyear and Sears subsequently entered into an agreement or series of agreements as established and evidenced by a course of conduct and course of dealing by and between the parties (the "Purchase Agreement(s)"), whereby Sears was obligated and required to purchase co-branded tires manufactured by Goodyear at agreed upon prices.  Sears has breached the Purchase Agreement(s) as averred below.

On January 5, 2014, consistent with the parties' course of performance and course of dealing, Sears submitted a forecast to Goodyear indicating that Sears would purchase over 330,000 co-branded tires over the next 12 months, and Goodyear manufactured those tires accordingly.   On or about June 17, 2014, Sears informed Goodyear that Sears was terminating the relationship and would not purchase any more co-branded tires from Goodyear.  Goodyear has an inventory of 219,994 co-branded tires that were specially manufactured for Sears per the parties' Purchase Agreement(s). Sears has refused to purchase these tires in breach of the parties' Purchase Agreement(s), as established and evidenced by the parties' course of performance and course of dealing, thereby damaging Goodyear in an amount greater than $18.9 million, plus prejudgment and post-judgment interest.

2

**The Parties**

2.     Goodyear is an Ohio corporation with its principal place of business in Akron, Ohio.

3.     Sears, Roebuck & Co. ("Sears Roebuck") is a New York corporation with its principal place of business at 3333 Beverly Rd., Hoffman Estates, Illinois.

4.     Sears Holdings Corporation ("Sears Holdings") is a Delaware Corporation with its principal place of business at 3333 Beverly Rd., Hoffman Estates, Illinois.

5.     Sears Roebuck is a wholly owned subsidiary of Sears Holdings.

6.     Sears Holdings Management Corporation ("Sears Management") is a Delaware Corporation with its principal place of business at 3333 Beverly Rd., Hoffman Estates, Illinois.

**Jurisdiction and Venue**

7.     This Court has original diversity jurisdiction over this matter under 28 U.S.C. § 1332(a) in that this is a suit between citizens of different States and the amount in controversy exceeds $75,000.

8.     Venue is proper in this district under 28 U.S.C. § 1391 because Sears is subject to personal jurisdiction in this district and a substantial part of the events or omissions giving rise to the claims in the complaint occurred in this district.

**Facts Common to All Claims**

9.     Goodyear owns the trademarks GOODYEAR, FUEL MAX, and FUEL MAX TECHNOLOGY (the "Goodyear Trademarks").

10.    Sears owns the trademark WEATHERHANDLER ("the Sears Trademark").

11.    On October 8, 2009, Goodyear and Sears entered into the Weatherhandler

3

Co-Brand Agreement (the "Co-Branding Agreement").

12.    Under the Co-Branding Agreement, Goodyear would manufacture tires bearing both the Goodyear Trademarks and the Sears Trademark for sale at Sears stores (the "Co-Branded Tires").  The Co-Branded Tires constitute "goods" that were "specially manufactured" for Sears within the meaning of UCC 2-201 (O.R.C. §1302.04).

13.    The Co-Branding Agreement prohibits Goodyear from selling the Co-Branded Tires to anyone other than Sears or a Sears affiliate.  Accordingly, the Co-Branded Tires "are not suitable for sale to others" in the ordinary course of Goodyear's business within the meaning of UCC 2-201 (O.R.C. §1302.04).

14.    The Co-Branding Agreement expressly contemplates a separate agreement or agreements governing the purchase/sale of the Co-Branded Tires.

15.    The Parties entered into the Purchase Agreement(s), all as established and evidenced by a course of conduct by and between the parties, pursuant to which Sears was obligated and required to purchase Co-Branded Tires manufactured by Goodyear at agreed upon prices.

16.    The parties had a consistent relationship, course of performance, and course of dealing under which each week Sears provided Goodyear rolling forecasts setting forth the quantities of Co-Branded Tires that Sears intended to purchase over the next twelve months.

17.    Goodyear then reasonably relied on the Sears' forecasts, ordering history, direction, course of performance, and course of dealing, and produced sufficient quantities of the Co-Branded Tires to ensure its ability to meet Sears' supply needs.

18.    Through this course of performance and course of dealing, Sears had a history of inducing Goodyear to produce large quantities of the Co-Branded Tires, and

4

then purchasing those tires.

19.    The forecasting process was a necessary and longstanding component of the Purchase Agreement(s) given the lead times necessary to plan, produce, and timely deliver the Co-Branded Tires.

20.    Sears emphasized the importance of Goodyear producing sufficient quantities of the Co-Branded Tires to ensure a steady supply of the tires to Sears, and Sears encouraged Goodyear to manufacturer larger quantities of Co-Branded Tires so that Goodyear could improve its fill rates to Sears.

21.    On or about January 5, 2014, Sears submitted a forecast to Goodyear indicating that Sears would purchase over 330,000 Co-Branded Tires over the next twelve months.

22.    For several months thereafter, Sears continued to submit forecasts indicating a demand for a large quantity of Co-Branded Tires.

23.    In April 2014, Sears put its tire business out to bid, and while the individuals on both the Sears and Goodyear sides of the relationship expected Goodyear to win that bid, Sears informed Goodyear on June 18, 2014, that it had selected another tire company as its supplier.

24.    During the bid-process, Sears continued to submit 12-month rolling forecasts indicating a demand for a large quantity of Co-Branded Tires.

25.    On July 16, 2014, Sears informed Goodyear that it was refusing to pay for any finished Co-Branded Tires.

26.    Goodyear currently possesses an inventory of 219,994 Co-Branded Tires that were built based on Sears' forecasts, ordering history, requests, and direction.

27.    Sears has refused to purchase the remaining inventory of Co-Branded

Tires.

28.    The Co-Branded Tires were specially manufactured for Sears in accordance with the parties' Purchase Agreement(s), consistent with a course of performance and course of dealing between the parties, and due to restrictions in the Co-Branding Agreement, the Co-Branded Tires cannot be sold to others without Sears' consent.

29.    Sears has refused to permit Goodyear to sell the Co-Branded Tires to others.

30.    Sears' refusal to purchase the remaining inventory of Co-Branded Tires constitutes a breach of the parties' Purchase Agreement(s) and a breach of the implied covenant of good faith and fair dealing.

31.    As a result of Sears' breach, Goodyear has suffered damages in excess of $18.9 million, plus prejudgment interest and post-judgment interest.

32.     Sears further caused damage to Goodyear by taking over $600,000 in improper discounts for tires Sears actually purchased.

33.    Goodyear and Sears had an agreement under which Sears would qualify for a certain discount if Sears paid invoices within 60 days.

34.    Even though Sears did not pay invoices within 60 days, it still took the discount off of the invoices resulting in an underpayment to Goodyear.

35.    To date, Sears has taken over $600,000 in improper discounts.

36.    Goodyear has demanded that Sears pay this amount, but Sears has refused.

37.    Sears breached the parties' agreement by taking improper discounts.

38.    As a result of Sears' breach, Goodyear has suffered damages in excess of

$600,000, plus prejudgment interest and post-judgment interest.

## Count I

(Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing)

39.     Goodyear repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

40.     Goodyear and Sears entered into the Purchase Agreement(s), consistent with their course of performance and course of dealing, under which Sears would provide Goodyear weekly rolling forecasts for the quantities of Co-Branded Tires that Sears would purchase over the next twelve months, and then Goodyear would produce and Sears would purchase the quantities of Co-Branded Tires.

41.     On June 18, 2014, Sears informed Goodyear that Sears was terminating their relationship.

42.     On July 16, 2014, Sears informed Goodyear that it would not purchase or otherwise pay for Goodyear's remaining inventory of Co-Branded Tires, which had been built based on Sears' forecast and direction and in accordance with the parties' agreement, course of performance, and course of dealing.

43.     Sears' refusal to purchase the remaining inventory of Co-Branded Tires constitutes a breach of contract and a breach of the covenant of good faith and fair dealing.

44.     As a result of Sears' breach, Goodyear is entitled to recover damages from Sears in accordance with UCC 2-709 (O.R.C. §1302.83) equal to the agreed upon price of the Co-Branded Tires, which is in excess of $18.9 million, plus prejudgment interest and post-judgment interest.

## Count II

### (Promissory Estoppel)

45.     Goodyear repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

46.     Sears' forecasts, combined with its ordering history, direction, course of performance, and course of dealing, constitute an express promise to Goodyear that Sears would purchase the forecasted quantities of Co-Branded Tires.

47.     Goodyear reasonably relied on those promises by building and possessing an inventory of Co-Branded Tires in the quantities promised.

48.     Sears failed to abide by its promise by refusing to purchase or otherwise pay for the Co-Branded Tires currently in Goodyear's inventory, which tires were built based on Sears' forecasted demand and direction.

49.     As a result of Sears' failure to abide by its promise, Goodyear has suffered damages in excess of $18.9 million, plus prejudgment interest and post-judgment interest.

50.     Sears is therefore estopped from denying an agreement with Goodyear, and Goodyear is entitled to recover its damages at trial.

## Count III

### (Breach of Contract)

51.     Goodyear repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

52.     Goodyear and Sears had an agreement under which Goodyear would sell tires to Sears for which Sears would pay specified prices.

53.     Goodyear and Sears also agreed that Sears would qualify for a certain

8

discount if Sears paid invoices within 60 days.

54.     Even though Sears did not pay invoices within 60 days, it still took the discount off of the invoices resulting in an underpayment to Goodyear.

55.     To date, Sears has taken over $600,000 in improper discounts.

56.     Goodyear has demanded that Sears pay this amount, but Sears has refused.

57.     Sears breached the parties' agreement by taking improper discounts.

58.     As a result of Sears' breach, Goodyear has suffered damages in excess of $600,000, plus prejudgment interest and post-judgment interest.

### Count IV

(Unjust Enrichment)

59.     Goodyear repeats and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

60.     Sears improperly took over $600,000 in discounts off of the invoiced price for tires that Goodyear has delivered to Sears.

61.     Goodyear has demanded that Sears pay this amount, but Sears has refused.

62.     It would be unjust to permit Sears to continue withholding the more than $600,000 in improper discounts.

63.     Sears is being unjustly enriched to Goodyear's detriment in the amount of over $600,000.

64.     As a result, Goodyear is entitled to recover from Sears the amount of that unjust enrichment plus prejudgment interest and post-judgment interest.

WHEREFORE Goodyear prays for judgment against Sears as follows:

9

    a.        On Counts I and II, monetary damages in excess of $18.9 million, plus prejudgment interest and post-judgment interest;

    b.        On Counts III and IV, monetary damages in excess of $600,000, plus prejudgment interest and post-judgment interest;

    c.        That Goodyear be awarded its costs and expenses incurred in connection with this action, including attorney fees as provided by law; and

    d.        That the Court grant such other and further relief for Goodyear as the Court deems just and proper.

## **JURY DEMAND**

Goodyear respectfully demands a trial by the maximum number of jurors permitted by law with respect to all issues so triable.

Dated: October 27, 2014        Respectfully submitted,

                        _/s/David H. Wallace_____
                        David H. Wallace (0037210)
                        dwallace@taftlaw.com
                        Michael J. Zbiegien Jr. (0078352)
                        mzbiegien@taftlaw.com
                        Jennifer B. Orr (0084145)
                        jorr@taftlaw.com
                        Taft Stettinius & Hollister LLP
                        200 Public Square, Suite 3500
                        Cleveland, Ohio 44114-2302
                        Telephone: 216.241.2838
                        Fax: 216.241.3707

                        Attorneys for Plaintiff
                        The Goodyear Tire & Rubber Company

73096728